# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

```
FILED
SEP 0 3 2024
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:            Deputy Clerk
```

In re:  Chapter 7

BRIAN MORGAN HEIT                      Case No. 9:24-bk-10608-RC

And

ADEPT LEGAL COUNSEL, PC,              Case No.  9:24-bk-10554-RC
Formerly, HEIT LAW GROUP, INC.,
DOES 1-50
        Debtors.

---

DANIEL E. GONZALEZ,                   Adversary Proceeding No.

        Plaintiff,

-against

ADEPT LEGAL COUNSEL, PC, formerly,
HEIT LAW GROUP, INC., DOES 1-50

And

BRIAN MORGAN HEIT, ATTORNEY AT LAW

        Defendants.

---

### \COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY AND OBJECTING TO DEBTOR'S DISCHARGE PURSUANT TO SECTIONS 523 AND 727 OF THE BANKRUPTCY CODE

## I.  INTRODUCTION

Daniel Gonzalez, a diligent policyholder, finds himself compelled to seek judicial

intervention against a backdrop of egregious misconduct by his insurer and former legal

1

representatives. Entrusted with safeguarding his interests, these entities instead orchestrated a convoluted scheme of deception, leaving Mr. Gonzalez vulnerable and unjustly penalized. Despite his consistent efforts to comply with policy requirements and legal directives, Mr. Gonzalez was met with a calculated betrayal that not only disregarded his rights but also exploited his trust.

This case unfolds a narrative of repeated bad faith, where the defendants, well aware of their duties and the detrimental impact of their actions, chose to prioritize their gain and profit over legal and ethical obligations owed to Mr. Gonzalez as a matter of public law. Their actions, marked by a pattern of professional negligence, incompetence, unauthorized conversions of trust funds, and fraudulent maneuvers, were not isolated incidents but part of a deliberate strategy to undermine Mr. Gonzalez's best interests in malice manner. It is against this backdrop of manipulative and repeated misconduct that Mr. Gonzalez seeks redress and accountability, urging the court to rectify the grave injustices inflicted upon him.

## II.    **JURISDICTION**

1.      Plaintiff incorporates the above allegations set forth in the preceding paragraphs of this Complaint as if set forth at length herein.

2.      On May 29, 2024, two voluntary petitions (the "Petitions") for relief were filed under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California. The case is thus a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and 157(b)(2)(J).

3.      This is an adversary proceeding wherein a creditor consequentially objects to any discharge and seeks a determination as to the dischargeability of the debt owed pursuant to 28 U.S.C. § 1334 and Bankruptcy Code §§ 523 and 727.

4.　　This Court has subject matter jurisdiction over the present matter involving the unauthorized conversion of trust funds by an attorney, as it involves a violation of state trust and fiduciary duty laws, which are within the purview of this Court. Additionally, the claims asserted arise under the statutes governing the professional conduct of attorneys and the management of client funds, which are specifically addressed in the state's legal statutes that grant jurisdiction to this Court for such matters.

5.　　This Court has personal jurisdiction over the Defendants, who is a resident of this jurisdiction and was acting in an official capacity as an attorney at the time of the alleged unauthorized conversion of trust funds. The Defendants' professional and business activities, including the management of client trust funds, are conducted within this state, providing sufficient minimum contacts with this jurisdiction to warrant the exercise of personal jurisdiction in accordance with the principles of due process.

6.　　This Court may exercise supplemental jurisdiction over related state claims. Pursuant to 28 U.S. Code § 1367(a), in pertinent part, states: "(a) Except as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

### III.　　**PARTIES**

7.　　Plaintiff incorporates the above allegations set forth in the preceding paragraphs of this Complaint as if set forth at length herein.

8.      Daniel E. Gonzalez (hereinafter, "Mr. Gonzalez" or "Plaintiff") is an individual, former real estate broker, and resides in Pleasanton, California. As a former client victimized by the attorney and law firm Defendants, he is a Creditor consequentially damaged in related state and federal actions.

9.      Brian Morgan Heit is an individual and resides at 1162 Vista Canyon Lane, Newbury Park, California 91320. As a Defendant-Debtor, he is an attorney licensed in Florida and California, practicing as chief financial officer, secretary, and president operating Adept Legal Counsel, PC, formerly, Heit Law Group, Inc. This is a professional corporation organized and existing under the laws of the State of California, with its principal place of business located at 2239 Townsgate Road, Suite 104, Westlake Village, California 91361. They are sued collectively in their personal and official capacity as Defendants-Debtors (known as the "Heit Defendants").

## IV.    GENERAL ALLEGATIONS

10.      Plaintiff incorporates the above allegations set forth in the preceding paragraphs of this Complaint as if set forth at length herein.

11.      Plaintiff is currently ignorant of the true names and capacities whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 50, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have ascertained as permitted by the court. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff.

12.    Plaintiff thereon alleges that all Defendants, including the fictitious Doe

Defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents,

partners and/or joint venturers and employees of all other Defendants, and that all acts alleged

herein occurred within the course and scope of said agency, employment, partnership, joint

venture, conspiracy and/or enterprise, and with the express and/or implied permission,

knowledge, consent,  authorization and ratification of their co-defendants; however, this

allegation is pleaded as an "alternative" theory wherever not doing so would result in a

contradiction with other allegations.

13.    All allegations in this complaint are based on information and belief and/or are

likely to have evidentiary support after a reasonable opportunity for further investigation or

discovery. Whenever allegations in this complaint are contrary or inconsistent, such allegations

shall be deemed alternative.

## V.    STATUS OF THE BANKRUPTCY PROCEEDINGS

14.    Plaintiff incorporates the above allegations set forth in the preceding

paragraphs of this Complaint as if set forth at length herein..

15.    On July 10, 2024, the Heit Defendants' duly-noticed meeting of

creditors was held pursuant to Section 341(a) of the Bankruptcy Code (the "Section 341

Meeting"). The Section 341 Meeting was recorded. The Heit Defendants refused to answer

whether he/it had committed an unauthorized attorney conversion of Plaintiff's trust funds and

other fiduciary breaches while representing Plaintiff in an insurance bad faith action.

Unauthorized attorney conversion of trust funds is defined as a "garden-variety theft." (*Lee

v. Hanley* 61 Cal.4th 1225, 1232 (Cal. 2015)

16.    On July 24, 2024, a second Section 341 Meeting was held. The Section 341

Meeting was recorded.  Counsel for the Heit Defendants Heit verbally affirmed that the addresses

listed on the corresponding bankruptcy petitions contained accurate addresses. On July 26, 2024,

Plaintiff filed Proofs of Claims in this Court case no. 9:24-bk-10608-RC and case no. 9:24-bk-

0554-RC.

17.      After two years of evading service using bogus physical street addresses

filed with the California Secretary of State, the Heit Defendants were duly served by

Notice of Receipt and Acknowledgement the Summons and complaint in Sacramento

Superior Court, 34-2021-00305382, *Daniel Gonzalez v Brian Heit*, Does 1-50. They have

failed to answer to that state action, thereby defaulting, instead filing this bankruptcy

proceeding prior to a judgment for Plaintiff.

18.      This Complaint is timely because the earliest date by which a Complaint

objecting to the Heit Defendants' discharge or to determine dischargeability of a debt

expires on September 3, 2024.

19.      As of the date of this Complaint the Heit Defendants have not been granted

a discharge.

## VI.    THE ATTORNEY-CLIENT RELATIONSHIP AROSE FROM ONE VEHICULAR ACCIDENT AND INSURANCE BAD FAITH RESULTING IN FRAUD ON THE COURT

20.      Plaintiff incorporates the above allegations set forth in the preceding

paragraphs of this Complaint as if set forth at length herein.

21.      The attorney-client relationship alleged defrauded by the Heit Defendants

relate to various claims arising from one rear-ender motor vehicle accident on July 22, 2009.

Plaintiff had no liability or fault in causing the rear-ender accident. The information and facts

set forth herein has been submitted multiple times into the superior court record and they were

provided supporting admissible records, pleadings from other related actions, 2012-2014

depositions, and 2011-2020 hearing transcripts were shared with the Heit Defendants on or after August 4, 2020.

22.      On January 2, 2009, insurer California State Automobile Association Insurance Exchange ("CSAA") issued an auto liability policy No. PAA-051500622 with UIM coverage of $100,000/$300,000 at an annual cost of $2,673, for which Plaintiff paid $401 as the initial down payment.

23.      Contemporaneously, in March 2009 Plaintiff had filed a civil action to enforce a short sale agreement executed by Chase Bank, NA on behalf of HSBC Bank. In May 2009, HSBC Bank caused a retaliatory unlawful detainer action and wrongly evicted Plaintiff from his home.

24.      During the eviction period, unbeknownst to Plaintiff, the January 2009 had lapsed due to inadvertent bank and mail processing errors resulting in missed payments. The temporary policy lapse lasted from June to July 2009. During the eviction and policy lapse no motor vehicle accidents involving Plaintiff had occurred or were reported to CSAA. After a stay of the unlawful detainer action, Plaintiff and his daughter returned to the Citrus Heights home in the evening of July 21, 2009.

25.      On July 22, 2009, as a former real estate broker, Plaintiff learned that a $1,000.00 check was deposited at Chicago Title Company in Citrus Heights, and real estate contracts had to be picked up. On the way to the title company, other mail from CSAA was discovered that was left at the vacant house during the eviction cancelling the January 2009 policy for missed payments.  At approximately 1:46 PM and 1:54 PM, respectively, Plaintiff faxed two loss mitigation offers from Chicago Title in Citrus Heights for a real property listing he had in South Sacramento.

26.      Plaintiff made a recorded telephone call to CSAA at approximately 3:00 PM.

while still at the same Chicago Title office. During that recorded telephone call, Plaintiff

authorized CSAA representative, Sheila Belmonte, to charge missed payments for June and July

2009 premiums and reactivate the January 2009 (policy No. PAA-051500622). During this

recorded call, Ms. Belmonte stated the payment authorization for the January 2009 policy would

"reinstate it with the same coverage and without interruption." Belmonte suggested lower

payments over 12 months if CSAA approves. Belmonte would call Plaintiff later to confirm if

approved. These facts and documents were shared with the Heit Defendants on or after August 4,

2020.

27.      Thereafter, Plaintiff and his daughter arrived at 8135 Munslow Way, South

Sacramento, where he met with Ms. Goodman for a 5:00 PM appointment. At about 6:18 PM,

Ms. Goodman signed a real estate contract form. Thereafter, they stopped for dinner at a Chinese

restaurant n Vintage Road at about 6:30 PM. After about an hour, they started to drive home at

about 7:30 PM. These facts and documents were authenticated by depositions in 2012-2014 and

shared with Defendants.

28.      Shortly after dinner, while stopped at a red traffic light on South Watt near

Florin Road, South Sacramento, Plaintiff's vehicle was rear-ended by another vehicle. The

impact caused some damage to the frame of his vehicle. Amy Peters owned the vehicle that was

negligently driven by her daughter, Megan Pugh. Plaintiff was injured while reaching to protect

his daughter from the impact. Both Peters and Plaintiff were insured by CSAA, and they

exchanged insurance and driver license information. Pugh admitted liability and requested

Plaintiff not call the police while insisting she had to tell her mother first before reporting the

accident to CSAA. While standing at the rear of their car, however, Plaintiff and his daughter

could smell marijuana smoke coming from the two male passengers in Peter's car nearby. Plaintiff told Pugh she better report the accident within two days.

29.     After the accident, Plaintiff's daughter drove home due to the pain Plaintiff experienced. After getting home after 8:30 PM, a recorded phone message from Belmonte was discovered stating CSAA had approved the 12 month repayment plan of lower premiums for the unpaid balance of the January 2009 (policy No. PAA-051500622). On July 25, 2009, Plaintiff reported the accident to CSAA, stating it occurred sometime after 6:30 PM when the appointment in South Sacramento ended but had no exact time as the police were not called.

30.     On July 29, 2009, Plaintiff sought medical care at the emergency room of Mather Veterans Affairs Medical Center for injuries sustained in the accident. The emergency room physician noted problems with Plaintiff's neck and administered an injection into his shoulder to control pain.

31.     On August 5, 2009, CSAA sent a letter to Plaintiff stating that "CSAA treats its insureds with the highest quality of service." On August 13, 2009, CSAA telephoned Plaintiff and during the call he reported marijuana smoke emitting from Pugh's vehicle from two male passengers. Plaintiff requested CSAA investigate the marijuana issue. On September 2, 2009, CSAA wrote a letter that stated Plaintiff was responsible for investigating any criminal allegations against Pugh or her passengers. On September 9, 2009, Plaintiff wrote a letter requesting Peters' policy limits. On September 21, 2009, Plaintiff sent a letter proposing CSAA settle his claims for Peters' policy limits of $50,000/$100,000. On December 17, 2009, CSAA offered $2,500 to settle all of Plaintiff's claims. Meanwhile, Plaintiff continued to pay premiums for the reinstatement of the January 2009 policy until February 2010, after he retained the first attorney,

32.     In January 2010, Plaintiff and his daughter retained attorney Robert Norik Kitay ("Kitay") in claims against Peters. In March 2010, Plaintiff delivered to Kitay all letters and records regarding the July 22, 2009 rear-end accident. Between February 2010 and June 2011, Kitay did not conduct an investigation, did not interview any witnesses, did not request CSAA preserve all recorded calls, did not conduct any discovery, never made a UIM benefits claim, and never filed a civil action. (*Buckert v. Briggs,* (1971) 15 Cal.App.3d 296, at p. 301.) In April 2011, Kitay explained he could not handle the case because CSAA claimed Amy Peters reported the accident happened at 4:50 PM, my January 2009 policy had lapsed, Plaintiff was not insured when it happened, and he had to move his business office. As Kitay mishandled the accident matters, Plaintiff needed treatment for continued accident injuries at the Veterans Administration medical center. While under VA medical care, in December 2010, Plaintiff lost his real estate broker license by default due to his continued disability. During January 2010 and October 2011, Kitay was retained to handle three cases for Plaintiff including the auto accident matter, the Chase/HSBC matter, and a probate collection matter. Kitay mishandled each with incompetence, positive misconduct, and negligence.

33.     Plaintiff retained attorney John Demas ("Demas") to handle the 2009 auto accident matter and CSAA refusal to settle. On June 22, 2011, Demas filed a negligence action, Sacramento Superior No. 2011-00105722, *Gonzalez v Peters, Pugh, et al*. In October 2011, CSAA defended Peters and claimed the maximum amount due for coverage of Pugh was paid for medical bills and collision repair. In December 2011, Plaintiff provided Demas with *handwritten* responses to Peters' form interrogatory requests. For the time of the accident, Plaintiff wrote "after 6:30 PM" because there was no police report for the exact time. At the time of making the *handwritten* responses, Plaintiff did not recall having dinner

10

for about one hour at the Chinese restaurant after the appointment with Ms. Goodman, which would more accurately make the accident time about 7:30 PM. Unbeknownst to Plaintiff, however, Demas mistyped the *handwritten* response as "5:30 PM" for the time of the accident. In February 2012, Plaintiff testified the accident happened "in the early evening" as the time of the accident as there was no police report, not knowing Demas had mistyped his *handwritten* response of 6:30 PM. In June 2012, Peters' attorney claimed the accident happened after Ms. Belmonte reinstated the January 2009 policy with a 12 month repayment plan based on her telephone call to Plaintiff's home phone recorded at 6:20 PM. When CSAA requested an Examination Under Oath, to which Demas subbed out in August 2012. Demas advised Plaintiff to file a legal malpractice against Kitay and blamed on Kitay for not preserving the 3:00 p.m. recorded phone call with Ms. Belmonte and not obtaining the transcript from July 22, 2009. According to Demas, he claimed Kitay negligently failed to preserve the transcripts for all CSAA recorded telephone calls between Plaintiff and Belmonte, failed to interview any third-party witnesses such as Ms. Goodman, or conduct any discovery to negate CSAA's claim of no insurance for the accident.

34.     In October 2012, a legal malpractice action was filed against Kitay, Sacramento Superior 34-2012-00134527, *Gonzalez v Kitay, Does 1-50*. Kitay then filed for bankruptcy in January 2013, staying the malpractice action. Also in January 2013, while litigating the Peters' matter pro se, Plaintiff had a stroke in his left eye allegedly the result of overmedication at the VA, leaving him legally blind.

35.     On February 6, 2013, Plaintiff appeared and gave testimony at a second deposition to Peters' attorney, limited to establishing the time of the accident and the reinstatement of the January 2009 policy on July 22, 2009. First, Plaintiff clarified that

Demas mistyped the December 2011 "5:30 PM" response to form interrogatory no. 20.1, and

testified "it was a clerical error" by his prior attorney. Next, Plaintiff unequivocally testified

the accident happened "after 6:30 PM and sometime between 7:30 PM and 8:30 PM."

36.    On February 12, 2013, CSAA sent a letter from their attorney, Peter Viri,

denying coverage claiming Plaintiff did not report the accident timely, Peters reported the

accident happened at "4:50 PM", Demas' mistyped discovery response of "5:30 PM", Ms.

Belmonte calling my Citrus Heights home phone recorder at "6:20 PM" though Plaintiff was

in South Sacramento after 6:30 PM, and not providing an Examination Under Oath

deposition though he testified on February 6, 2013.

37.    Between March 2013 and September 2014, attorney Mark Swartz

("Swartz") was retained to represent Plaintiff. In July 2013, Plaintiff underwent shoulder

surgery due to the 2009 accident. Swartz and CSAA took deposition testimony from negligent

driver Pugh and Plaintiff's daughter in June 2014 and July 2014. Both explained how and

when the accident happened at about 7:30 PM on July 22, 2009. CSAA offered a settlement

of $5,001.00 while it continued to conceal the 3:00 p.m. recorded telephone call or any

transcripts from July 22, 2009. In late July 2014, CSAA refused to pay the settlement

demand of $879,000.00 by Swartz, still claiming the accident happened after the

reinstatement of the January 2009 policy by relying on Ms. Belmonte's phone call of 6:20

PM to Plaintiff's home recorder. By July 2014, however, Ms. Belmonte had refused to

appear at four noticed depositions demanded by CSAA beginning in November 2012 and

thus failed to authenticate her written records.

38.    During that same August 2014 period, Plaintiff obtained a bankruptcy court

judgment of $5,000.00 against Kitay for defalcation. Thereafter, the State Bar imposed a six

month suspension on Kitay regarding unethical misconduct and misappropriations of client

funds during 2008-2011.

39.    In September 2014, Swartz substituted out of the Peters action, claiming he

did not handle federal tort claims against the VA, while Plaintiff learned Swartz had failed to

discover the criminal record of Pugh's boyfriend (Prim) was one of the passengers at the

time of the accident, had an outstanding felony arrest warrant for marijuana trafficking. Thus,

by November 2014, CSAA had frustrated and delayed the Peters action through bad faith,

and now overcomplicated with alleged VA malpractice issues outside the state court's

jurisdiction.

40.    In April 2015, the VA denied a federal tort claim for allegedly causing the

legal blindness to Plaintiff's left eye. In August 2015, facing an upcoming trial in the Peters

action, Plaintiff renewed Swartz's request that Peters' attorneys produce all the recorded

calls and associated written transcripts between Ms. Belmonte and Plaintiff on July 22, 2009.

CSAA continued to refuse disclosure of the missing telephone recordings on the eve of the

pending state trial. Due to the refusal for disclosure by CSAA, a federal deadline after the

VA denial, and the state court denial for a continuance of trial, Plaintiff was forced to dismiss

the Peters action without prejudice.

41.    In September 2015, CSAA forced Plaintiff to seek a federal declaratory

action in the Eastern District of California, No. 2:15-cv-01997, *Gonzalez v US, CSAA, Pugh,

Peters, and Does 1-50.* The federal complaint detailed all the relevant deposition testimony

from Pugh, Plaintiff's daughter, and Plaintiff to establish the time of the accident was about

7:30 PM on July 22, 2009. In addition, Plaintiff included scientific evidence based on that

testimony and other discovery responses from Pugh and Peters to prove the time of the

accident was about 7:30 PM to 7:55 PM on July 22, 2009. In February 2017, the district

court declined to exercise supplemental jurisdiction over the claims regarding the Peters

action, leaving only the federal tort claims for blindness.

42.    On November 18, 2015, Plaintiff filed an action for breach of contract and bad

faith against CSAA, i.e., in Sacramento Superior Court, 34-2015-00186923, *Gonzalez v*

*CSAA, Does 1-50*. While this CSAA action was pending, Kitay's legal malpractice action

was returned to the state court. Using the three cases he previously represented Plaintiff

negligently and incompetently, Kitay used the vexatious litigant statutes to evade a

deposition in the legal malpractice action. On March 1, 2016, a now retired state judge

exceedingly biased in favor of Kitay, declared Plaintiff a vexatious litigant in Sacramento

Superior Court 34-2012-00134527, *Daniel Gonzalez v Robert Kitay*. An appeal was not

permitted of the vexatious litigant order. In 2017, however, it was uncovered in another

Sacramento case involving the same retired judge, that Kitay had actually committed fraud

on the court since 2010. According to court records, Kitay concealed his 2010 fraud on the

court acts from the vexatious litigant motion used in Plaintiff's legal malpractice. In April

2018, Kitay was ultimately disbarred, but the vexatious litigant stigma still remains against

Plaintiff despite being a bankruptcy creditor with a favorable judgment in the adversarial

proceeding against Kitay since April 18, 2014.

43.    During 2017 and 2019, the CSAA case no. 34-2015-00186923, *Gonzalez v*

*CSAA, Does 1-50,* cycled through a numerous motions to add and dismiss parties, several

denials to compel discovery from CSAA, and motions to sanction Plaintiff due to the wrongly

imposed vexatious litigant stigma.

44.    In June 2019, Plaintiff retained attorney William A. Wright ("Mr. Wright"). In July 2019, Mr. Wright drafted a first amended complaint. The CSAA attorneys successfully demurred due to health issues affecting Mr. Wright.

45.    On October 9, 2019, the Sacramento Presiding Judge declared that if Plaintiff is represented by counsel, *no security bond is required.* (Emphasis added.)  On January 7, 2020, through Mr. Wright, Plaintiff successfully had a second amended complaint operative against CSAA in Sacramento Superior Court, 34-2015-00186923, Gonzalez v CSAA, Does 1-50. The claims were for breach of contract and bad faith. After CSAA failed to file a verified answer, Plaintiff through Mr. Wright filed a request for entry of default in the amount of $22,000,000.00 against CSAA. CSAA later filed a verified answer negating the entry of default.

46.    During out of court communications, CSAA finally disclosed a copy of the claim filed to Mr. Wright on April 9, 2020. The claim file established one indisputable material fact: *no accident involving Plaintiff was ever reported to CSAA prior to 8:30 PM on July 22, 2009.* (Emphasis added.)  The CSAA claim file never included any of the 2012-2014 deposition testimony proving the time of the accident was 7:30 PM on July 22, 2009, never included any of the allegations from the 2015 VA complaint, never included any of the scientific evidence attached thereto as exhibits based on the negligent driver's own deposition testimony proving the accident occurred about 7:30 PM on July 22, 2009, never included the time stamped fax records from Chicago Title proving Plaintiff's location when he first spoke to Ms. Belmonte to reinstate the January 2009 policy on July 22, 2009, never included the real estate contract establishing the time when Ms. Goodman signed at 6:18 PM proving Plaintiff's location about one hour before the accident occurred on July 22, 2009, never disclosed the actual statements in transcripts made

from all the recorded telephone calls between Ms. Belmonte and Plaintiff on July 22, 2009, and

never disclosed the amended 2012-2013 discovery responses from Plaintiff.

47.    Unfortunately, in May 2020, Mr. Wright was diagnosed with cancer, forcing

him to substitute from the Sacramento Superior Court, 34-2015-00186923, Gonzalez v

CSAA, Does 1-50 case. Between June 1, 2020 and July 26, 2020, in pro se Plaintiff filed for

arbitration but denied each time. In late June 2020, in pro se Plaintiff discovered that former

attorney Swartz had written an *undisclosed* 2014 letter to former attorney Demas, requesting a

copy of Plaintiff's *handwritten* responses to Peters' form interrogatories from December 2011

regarding the time of the accident.

48.    On July 29, 2020, the law and motion court granted CSAA's motion for

judgment on the pleadings ("MJOP") with leave to amend the breach of contract cause of action

only with more detail with the condition that Plaintiff first obtain a prefiling order from the

Presiding Judge. The prefiling order made the SAC inoperative. The MJOP order further

stated that if Plaintiff obtains a prefiling order from the Presiding Judge, he may file and

serve a third amended complaint ("TAC") within 30 days of the issuance of the prefiling

order." As with a prior state court order entered on February 13, 2019, the statutory effect of

Code of Civil Procedure §391.7(c) is that the CSAA action should have been automatically

stayed, but no such order issued. On July 30, 2020, Plaintiff filed a "Notice of Stay of

Proceedings" based on the order entered on July 29, 2020

49.    Despite Plaintiff's compliance with the policy terms, including payment of

premiums and providing timely notice of the 2009 accident, CSAA unequivocally acted in bad

faith and never honored the reinstated January 2009 policy regarding rear-ender accident on July

22, 2009.

50.     The documents purposefully withheld from the CSAA claim file, and the

handwriting expert report of Bart Bagget, can establish CSAA and its attorneys knowingly

engaged in fraud on the court to obtain a security bond order by motion on July 8, 2020, and

court order entered on August 6, 2020.

////////////////////

## VII.    THE HEIT DEFENDANTS' REPRESENTATION IN THE STATE COURT ACTIONS

51.     Plaintiff incorporates the above allegations set forth in the preceding

paragraphs of this Complaint as if set forth at length herein.

52.     On July 30, 2020, Mr. Gonzalez uploaded a case description of his CSAA action

on a California referral service website named "Court Buddy." Mr. Gonzalez paid an initial

retainer of $400 to the Heit Defendants.

53.     On August 3, 2020, Court Buddy emailed and texted Mr. Gonzalez at 4:05

p.m., the following message: "Good news, Daniel! Lawyer Brian has accepted your case." Court

Buddy later emailed: "an attorney agreed to represent you." Attorney Brian Heit ("Defendant

Heit") texted Mr. Gonzalez at 04:06 PM with the following: "Brian H., Hi Daniel, Please let me

know a few times tomorrow that you are available to speak about your matter. Feel free to send

me an email brian@heitlawgroup.com." Court Buddy then texted the following: "Hi Daniel.

Your lawyer Brian has sent you a new message."

54.     On August 4, 2020, between 11:18 AM and 11:36 AM., Plaintiff spoke by phone

with Defendant Heit. In response to Defendant Heit's questions, Mr. Gonzalez gave a detailed

explanation on the nature of the bad faith action, possibility of arbitration, need to amend the

Wright complaint, what material evidence CSAA was concealing to make its claim file

misleading, how did Kitay obtain a vexatious litigant order, and the pending motion to impose a

17

security bond. Defendant Heit replied that they "can end the schemes, refusal to arbitrate, and bad faith by AAA," then quoted he would want a $10,000.00 retainer. Plaintiff made clear that he could not afford to pay a $10,000 retainer and pay a high security bond too, which Defendant Heit "understood and agreed." Relying on Defendant Heit's assurances, Mr. Gonzalez emailed the VA and Wright complaints, deposition transcripts, exhibits, and other evidence supporting the breach of contract and bad faith claims.

55.    On the morning of August 5, 2020, Defendant Heit phoned to note he had reviewed many of the documents sent yesterday. At 2:05 PM, Mr. Gonzalez was surprised by the sudden appearance in the CSAA action of the same judge who declared him a vexatious litigant in the Kitay action. The judge tentatively imposed a $7,500 security bond that must be paid by September 11, 2020, or the case would be dismissed. At 2:35 PM, Mr. Gonzalez emailed the following: "Hi Brian, I should have the documents ready for you later today. I have a situation in the case that needs your assistance with as it severely jeopardizes my financial ability to retain you. The judge imposed a security requirement of $7,500 by a tentative ruling. Would you please contact me as soon as possible to talk about it briefly? I have asked for oral argument but will need to discuss this with you before saying anything. Thank you, Daniel." At 3:29 PM, Plaintiff called Defendant Heit's office and left a message to discuss the tentative security order. Mr. Gonzalez requested Defendant Heit to appear by telephone and join him at the 9:00 AM hearing on Aug 6 to show the court an attorney represents him. Based on the standing order from October 10, 2019, Defendant Heit's appearance would have greatly helped negate or reduce the $7,500 security bond. Not receiving a response, Plaintiff called and left another voice message at 6:34 PM asking Defendant Heit to appear at the court hearing.

56.    On August 6, 2020, Defendant Heit called Plaintiff at about 8:30 AM and advised him to "just tell the judge you are represented by an attorney." Defendant Heit claimed

he could not appear at the hearing despite the importance that he confirm to the court he represents Mr. Gonzalez. At the hearing, Mr. Gonzalez appeared by telephone, told the court that he had an attorney and objected to the security bond because CSAA was committing fraud on the court. The CSAA attorney denied any attorney had contacted him and the order to pay a $7,500.00 security bond was affirmed.

57.     Between August 7 and August 19, 2020, Plaintiff spoke to the Heit Defendants' office a total of about 30-35 minutes, mainly to email some letters, a fee agreement, and transfer the $10,000 retainer. Between August 20, 2020, and August 31, 2020, Plaintiff spoke with the Heit Defendant and staff a total of about 50 minutes repeating the same details on the case.

58.     On September 2, 2020, at 7:38 AM, Mr. Gonzalez sent the following email: "Brian, Would you please provide me electronic (email) copies of any letters and pleadings filed with the court or opposing counsel? As mentioned before, it is imperative that the substitution of attorney and request to the court commence as discussed. The deadline is September 11 per the pending stay order. Thank you." No response was received.

59.     On September 4, 2020, 1:55 PM, I emailed the following: "Brian and Guile, Would you please inform me by responding to this email what is happening in my case? I am deeply concerned with the September 11, 2020, deadline set by the court order to pay CSAA $7,500. Thank you, Daniel." At 4:30 PM, Plaintiff spoke to Guile (legal assistant) for about 3 minutes, who stated he did not know much about where the case is at and would email Brian to contact Plaintiff. No further response from Defendant Heit.

60.     On September 8, 2020, Plaintiff prepared and emailed two letters raising several issues including what was happening with his case, getting copies of any pleadings filed to the trial court, copies of letters sent to opposing counsel, and information about moving to set aside the security order.

61.    On September 9, 2020, at 3:01 PM, Defendant Heit and his legal clerk, Guile Gomez, had another 34-minute phone conversation with Mr. Gonzalez going over the same information of the case discussed with them on August 20 and August 31. During the conversation Mr. Heit stated he would from opposing counsel a stipulation for an extension of time of 30 days without paying the $7,500 security until "we can amend the complaint." Heit also stated that if opposing counsel refused, he would request relief from the court via ex parte or noticed motion so we can amend the complaint. To the contrary, Defendant Heit made no such request for any extension agreement or even spoke with opposing counsel to delay payment on the security bond as he represented he would do.

62.    On September 10, 2020, after doing virtually little for 5 weeks to advance the case or file anything with the court or confer with opposing counsel to extend the time to pay the security order, at 3:01 PM, Defendant Heit sent a letter stating to pay the $7,500 security bond due on September 11. This was shocking as Defendant Heit knew from the beginning Mr. Gonzalez had told him he could not afford to both retain the Heit Defendants and pay the security bond if imposed. Defendant Heit made no effort to offer any part of the $10,000 retainer deposited with the Heit Defendants to pay the security. He insisted Plaintiff had to "go get the $7,500 some other way" and to let him know when it was paid.

63.    Unable to meet the September 11 deadline due to a lack of funds and a pending eye operation, Mr. Gonzalez sent two additional letters on September 14 regarding an additional cause of action against CSAA for anticipatory breach/repudiation, as rebuttal to the false CSAA denial letter dated February 12, 2013.

64.    On September 17, Defendant Heit revealed he had made no contact with opposing counsel between August 4 and September 10. This was contrary to verbal representations to Plaintiff over the past six weeks that he was "doing certain things" but had no

20

contact with defense counsel at any time. Indeed, despite having been paid and receiving money since August 4, 2020, Defendant Heit had never registered with the Sacramento court system to receive electronic notices about the case as if appearing Plaintiff misrepresented to the court he had attorney.

65.     On September 14, 2020, the CSAA attorneys filed a motion to dismiss Plaintiff's case with a hearing date of October 22, 2020. In response, Mr. Gonzalez suggested finding a forensic handwriting expert to prove the breach of contract by my former insurer so he would oppose the dismissal.

66.     On September 21, 2020, before Mr. Gonzalez underwent eye surgery, he sent a second request for copies of all pleadings drafted by the Heit Defendants on his behalf. Defendant Heit failed to provide any pleading copies.

67.     On September 25, 2020, Plaintiff located a Daubert-court qualified forensic handwriting expert, Bart Baggett ('Mr. Baggett'). Plaintiff directed Defendant Heit pay the $795.00 for a report to establish whether Plaintiff's handwritten responses stated the time of the accident was "after 5:30P PM" or "after 6:30 PM" as CSAA claimed in its February 2013 letter was the primary basis for denying insurance coverage since July 22, 2009.

**68.**     On October 2, 2020, without a forensic report from Mr. Baggett, the Heit Defendants filed an ex parte motion to reconsider the security order to a different judge. The court denied the ex parte because Defendant Heit showed "no urgency" and the motion was filed to the wrong judge. Both reasons by the court have nothing to do with Defendant Heit's reasons written three weeks earlier. Thus, by October 2, 2020, the Heit Defendants failed to perform as was represented to Mr. Gonzalez, and left him in greater debt for a July 2009 rear-end accident he had no liability in causing.

**69.      On October 5, 2020, Mr. Baggett provided a forensic report and declaration
that established Mr. Gonzalez's handwritten responses from December 2011 actually stated
the time of the accident was "after 6:30 PM" on July 22, 2009. This established that CSAA
had breached the January 2009 auto liability policy for the prior eleven (11) years. More
importantly, Mr. Baggett's report and declaration proved that Plaintiff "had a greater
probability of success" because it impeached the motion for a security bond and the order
of August 6, 2020 as an error of law.** (Emphasis added.)

70.      By this time, however, the Heit Defendants had not provided any billing of
charges regarding the denied ex parte application for reconsidering the security order.
Shockingly, the Heit Defendants sent a billing statement claiming it had charged $7,400 over just
ten days that was for zero benefit. Not once did Defendant Heit ever inform Plaintiff of the
unconscionable amount of charges as compared to local attorneys for an ex parte request. Mr.
Gonzalez disputed the amount of fees charged by letter appear as overbilling. For example, he
charged $527 just to file an ex parte that normally cost $30.00 via Express courier such as
FEDEX.

71.      On October 6, 2020, Plaintiff telephoned Defendant Heit and requested the Heit
Defendants contribute $5,000 of the retainer deposit to pay the security bond, with Plaintiff
providing an additional $2,500, thus satisfying the $7500 security bond to CSAA.

72.      On October 7, 2020, Defendant Heit sent a letter stating he will withdraw from
the case because Plaintiff questioned his overbilling. In response, Mr. Gonzalez emailed that
Defendant Heit had always known Plaintiff could not afford to pay both the $7,500 security bond
and a retainer of $10,000. Defendant Heit stated there was $1937 left from the $10,000 retainer
but that the Heit Defendants would pay the $5,000 towards the security bond if Plaintiff signed a
full release and substitution of attorney form. That $5,000 included the $1937.

73.      On October 8, 2020, the Heit Defendants further prejudice the case by failing to

file a timely opposition to the dismissal motion set for hearing on October 22, 2020. Cal. Code of

Civil Proc. Section 1005(b).

74.      On October 16, 2020, Plaintiff sent a letter asking if the Heit Defendants if they

had filed an opposition timely to the dismissal motion or submitted Mr. Baggett's forensic report

to the court.  The Heit Defendants never answered questions about the quality of the legal

representation regarding Plaintiff other than to state Defendant Heit was too busy.

75.      On October 18, 2020, Defendant Heit emailed Plaintiff: "I agree to pay the

$5000 for the security bond."

76.      On October 19, 2020, Defendant Heit wrote he will not pay any money to

satisfy the security unless Plaintiff signed unconditionally the attached "Confidential Settlement

& Release Agreement" and substitution of attorney. This agreement contains a "Recital"

misrepresenting the facts and events that occurred during the Heit Defendants' representation.

He also sent a substitution of attorney he wants signed even though he claimed he would appear

to oppose the dismissal on Thursday.

77.      Faced with the October 26 deadline, Plaintiff then contacted the court clerk's

office to get instructions on how to pay the security bond and they responded that "your attorney

should know how to do that."  Defendant Heit wrote he refused to help do the security bond so

the case is not dismissed.

78.      On October 20, 2020, Mr. Gonzalez agreed to the $5,000.00 trust fund

repayment for the security bond and sent a signed substitution of attorney form to the benefit of

the Heit Defendants. Mr. Gonzalez then submitted separately a cashier check in the amount of

$2,500.00.

79.    On October 21, 2020, the Heit Defendants filed the substitution of attorney form with the court but never paid the court the remaining bond of $5,000.00 as promised and agreed in writing.

80.    Due to the late filed opposition by the Heit Defendants to dismissal, the court continued the dismissal hearing to November 18, 2020.

81.    Despite an October 26, 2020, letter from Plaintiff to Defendant Heit reminding the Heit Defendants to submit the $5000 to satisfy the security bond amount, no communication was made in response.

82.    On November 18, 2020, after the court issued a tentative ruling dismissing the CSAA action with prejudice for failure to pay the $7500 security bond, Plaintiff was shocked to discover that the Heit Defendants had not paid the court the $5000 promised and agreed to in writing. Despite making oral arguments, the court concluded the "problem is with your attorney."

83.    On August 3, 2021, the Presiding Judge of Sacramento Superior Court, Russell M. Hom, approved an action against the Heit Defendants and Defendant Heit for an unauthorized attorney conversion of trust funds and other related fraud claims, filed as Sacramento Superior Court, 34-2021-00305382, *Daniel Gonzalez v Brian Heit, Does 1-50.*

84.    Notwithstanding other claims against the Heit Defendants, this adversarial action asserts claims against the Heit Defendants, personally and officially, including a claim to pierce the corporate veil of Adept Legal Counsel, PC, Heit Law Group, Inc., or any other entity known or unknown presently, and impose alter ego liability upon the Heit Defendants for using business entities to commit fraud that resulted in catastrophic injury.

85.    Plaintiff claims that in acting in the trusted capacity of attorneys doing business as Adept Legal Counsel, PC, Heit Law Group, Inc., or any other entity known or

unknown presently, the Heit Defendants received monies intended to be remitted for the legal services necessary to obtain a judgment in Plaintiff's favor. Instead of performing competently as promised and represented, the Heit Defendants rapidly and improperly dissipated those funds and other corporate trust monies on personal expenses and not for the benefit of Plaintiff. As the principal officer for Adept Legal Counsel, PC, Heit Law Group, Inc., Defendant Heit made other improper payments to himself, friends, relatives, other company insiders; and failed to operate the corporate entities in a lawful business standard.

86.    The documents purposefully withheld from the CSAA claim file, and the handwriting expert report of Bart Bagget, can establish that the Heit Defendants' committed professional negligence, incompetence, and intentional misrepresentation that permitted CSAA to fraudulently obtain a security bond while conspiring to take unfair advantage of Plaintiff since October 21, 2020.

87.    The documents purposefully withheld from the CSAA claim file, and the handwriting expert report of Bart Bagget, can establish that the Heit Defendants' committed an unauthorized conversion of trust funds with malice intent of a fiduciary breach, resulting in the wrongful dismissal with prejudice, of Plaintiff's claim against CSAA.

88.    The Heit Defendants have made intentional misrepresentations including acts constituting fraud on the process that have resulted in extraordinary consequential harm, losses, and injuries to Plaintiff in an amount of damages not less than $20,000,000.00.

1.    **THE COURT SHOULD GRANT DECLARATORY RELIEF AND EXERCISE SUPPLEMENTAL JURISDICTION TO END THE FRAUD ON THE COURT**

89.     Plaintiff incorporates the above allegations set forth in the preceding paragraphs of this Complaint as if set forth at length herein.

90.     Under the Declaratory Judgment Act, Plaintiff respectfully requests the Court retain supplemental jurisdiction over the related state action claims lost due to the fraud, intentional torts, and malice including fraud on the court committed by the Heit Defendants, severally and jointly.

91.     The unauthorized attorney conversion of trust funds and other intentional bad acts alleged against the Heit Defendants relate to the negative impact, respectively, associated with events, parties, or claims in Sacramento Superior Court, 34-2015-00186023, *Gonzalez v CSAA, Does 1-50*; Eastern District of California, No. 2:15-cv-02448, *Gonzalez v Davi, et al.*; Eastern District of California, no. 2:!5-cv-01997, *Gonzalez v U.S., CSAA, Peters, Does 1-50*; Sacramento Superior Court, 34-2012-00134527, *Gonzalez v Kitay, Does 1-50*; Eastern District of California, Bankruptcy Court, Adversary Proceeding no.13-02126, *Law Offices of Robert Kitay, and Robert and Tristan Kitay*; Sacramento Superior Court, no. 34-2011-001077522, *Gonzalez v Peters, Pugh, Does 1-50;* Sacramento Superior Court, no. 34-2011-80000794, *Gonzalez v Davi, et al.*; and Sacramento Superior Court, no. 34-2009-00086219, *Gonzalez v Chase, HSBC, et al*. These California and federal actions are either stayed, or were incorrectly dismissed due to fraud on the court or fraudulent inducement, rendering such judgments void or voidable.

92.     Based on the extensive timeline and the events involving the unauthorized conversion and related intentional torts of the Heit Defendants including fraud on the court, the potential state and federal private causes of action that may be available to Plaintiff against other state actors are, but not limited to, as follows:

a) **Breach of Contract** - Loss of potential claims against CSAA for failure to honor the insurance policy agreement, especially if there was a promise of reinstatement "with the same coverage and no interruption of coverage."

b) **Bad Faith -** Loss of potential claims against CSAA for not acting in good faith in handling the insurance claim, including settlement offers, investigation duties, and honoring policy terms.

c) **Fraud on the Court –** Loss of potential claims according to proof that can demonstrate CSAA knowingly made false statements to the court, or concealed evidence during litigation would be grounds for this cause of action.

d) **Spoilation of Evidence** - Loss of potential claims if CSAA or other parties intentionally destroyed or failed to preserve evidence that was relevant to the case, Plaintiff could have a claim for spoilation.

e) **Legal Malpractice** - Loss of potential claims against attorneys Robet Kitay, John Demas, and Mark Swartz and possibly others for failing to conduct proper discovery, investigation, witness interviews, and preservation of evidence.

f) **Emotional Distress** - Loss i potential claims for the intentional infliction of emotional distress due to the mishandling of the insurance claim and litigation process, which may have exacerbated PTSD or other psychological harm.

g) **Discrimination -** Loss of potential claims if there was evidence that Mr. Gonzalez and his daughter were treated differently due to their ethnicity, there could be a claim for discrimination under state or federal statutes.

h) **Invasion of Privacy** - Loss of potential claims if Mr. Gonzalez's or his daughter's personal information was published or used improperly, they may have a cause of action for invasion of privacy.

i) **Intentional Interference with Contractual Relations** - Loss of potential claims if there was intentional disruption of Mr. Gonzalez's business relationships, he may have a claim for interference with contractual relations.

j) **Intentional Interference with Economic Advantage** - Loss of potential claims for intentional acts that caused economic harm to Mr. Gonzalez, such as interference with his real estate transactions or license.

k) **Negligence/Medical Malpractice** – Loss of potential claim against the VA facility for improper medical treatment that resulted in Mr. Gonzalez's blindness.

l) **Defamation** – Loss of potential claims if false statements were made that harmed Gonzalez's reputation, especially if linked to the wrongful revocation of his real estate broker license, there could be a defamation claim.

m) **Vexatious Litigation** - Loss of potential claims if it can be proven that the Vexatious Litigant Order was obtained through improper means or due to attorney malpractice or fraud, Gonzalez may have a claim for vexatious litigation.

n) **Breach of Fiduciary Duty** - Loss of potential claims against attorneys who may have acted against Gonzalez's interests or failed to meet their professional obligations.

o) **Fraudulent Concealment** - Loss of potential claims if any parties hid or manipulated evidence to the detriment of Gonzalez, he could claim fraudulent concealment.

p) **Violation of Consumer Protection Laws** - Loss of potential claims if CSAA's actions can be shown to violate state or federal consumer protection laws, Plaintiff could have a cause of action under those statutes.

q) **Retaliation** - Loss of potential claims for retaliation if Gonzalez was treated adversely for exposing wrongdoing, such as the marijuana smoking or aiding a felon.

r) **Conspiracy** - Loss of potential claims if multiple parties coordinated actions to the detriment of Gonzalez, a conspiracy claim might be applicable.

s) **Extrinsic Fraud** - Loss of potential claims if Gonzalez was prevented from fully participating in his underlying state cases due to deceit, he could have a claim for extrinsic fraud.

t) **Civil Rights Violations** - Loss of potential claims if there was discriminatory treatment by state actors, there could be a claim for civil rights violations under state or federal statutes.

93.    Unlike California discovery law and past adjudications when Plaintiff attempted to compel CSAA to produce and disclose, the Federal Rules of Civil Procedure 26-41 would provide authority to compel CSAA to disclose all the content from each recorded telephone call between Plaintiff and Ms. Belmonte on July 22, 2009. This would establish that CSAA committed fraud on the court since June 22, 2011 when Sacramento Superior Court Case No. 34-2011-00107522, Gonzalez v Peters, Pugh, et al., was filed.

**COUNT I**

**NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT UNDER**

**SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE**

94.    Plaintiff incorporates the above allegations set forth in the preceding paragraphs of this Complaint as if set forth at length herein.

95.    Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

(a)    A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(3)    for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

(A)    false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

96.    All or part of the debt owed to Plaintiff, as evidenced by the Judgment entered against the Heit Defendants, is non-dischargeable as it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, that was obtained by false pretenses, a false representation, an intentional or malicious act, or actual fraud within the meaning of Bankruptcy Code § § 523(a)(2)(A).

**COUNT II**

## NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT
### UNDER SECTION 523(a)(4) OF THE BANKRUPTCY CODE

97.       All or part of the debt owed to Plaintiff, as evidenced by the Judgment

entered against the Heit Defendants, is non-dischargeable as it is a debt for money,

property, services, or an extension, renewal, or refinancing of credit, that was obtained

by false pretenses, a false representation, an intentional or malicious act, or actual fraud

within the meaning of Bankruptcy Code § § 523(a)(2)(A).

98.       All or part of the debt owed to Plaintiff, as evidenced by the Judgment

entered against the Heit Defendants, is non-dischargeable as it is a debt for money,

property, services, or an extension, renewal, or refinancing of credit, that was obtained

by false pretenses, a false representation, an intentional or malicious act, or actual fraud

within the meaning of Bankruptcy Code § § 523(a)(2)(A).

99.       Bankruptcy Code§ 523(a)(4) provides, in relevant part, that:

(a)       A discharge under section 727, 1141, 1228(a),
          1228(b) or 1328(b) of this title does not discharge an
          individual debtor from any debt-

(4)       for fraud or defalcation while acting in a fiduciary
          capacity, embezzlement, or larceny . . . .

100.     All or part of the debt owed to plaintiff, as evidenced by the Judgment

entered against the Heit Defendants, is non-dischargeable as it is a debt for fraud or

defalcation while acting in a fiduciary capacity, embezzlement, or larceny within the

meaning of Bankruptcy Code § 523(a)(4).

### COUNT III

## NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT
### UNDER SECTION 523(a)(6) OF THE BANKRUPTCY CODE

101.    Plaintiff incorporates the above allegations set forth in the preceding paragraphs of this Complaint as if set forth at length herein.

102.    Bankruptcy Code§ 523(a)(6) provides, in relevant part, that:

> (b)    A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt-
>
> (6)    or willful and malicious injury by the debtor to another entity or to the property of another entity ...

103.    All or part of the debt owed to plaintiff, as evidenced by the Judgment entered against the Heit Defendants, is non-dischargeable as it is a debt for willful and malicious injury caused by the Heit Defendants within the meaning of Bankruptcy Code § 523(a)(6).

## COUNT IV

## OBJECTION TO DEBTOR'S DISCHARGE NDER
## SECTIONS 727(a)(3) and 727(a)(4)(A) OF THE BANKRUPTCY CODE

104.    Plaintiff incorporates the above allegations set forth in the preceding paragraphs of this Complaint as if set forth at length herein.

105.    Bankruptcy Code § § 727(a)(3) provides that:

> (a)    The court shall grant the debtor a discharge, unless
>
> (3)    the debtor has concealed, destroyed, mutilated, falsified,
>
> or failed to keep or preserve any recorded information,
>
> including books, documents, records, and papers, from
>
> which the debtor's financial condition or business
>
> transactions might be ascertained, unless such act or
>
> failure to act was justified under all of the
>
> circumstances of the case.

106.    Bankruptcy Code § § 727(a)(4) provides that::

(a)    The court shall grant the debtor a discharge, unless

(4)    the debtor knowingly and fraudulently, or in connection

with the case –

(A)    made a false oath or account.

107.    The Heit Defendants, in his operation of his various businesses, including Adept Legal Counsel, PC, Heit Law Group, Inc., or any other entity known or unknown presently, operated these businesses as his alter ego, seeking to shield himself from personal liability while at the same time using funds of that business for personal purposes.

108.    The Heit Defendants, in his operation of his business, including Adept Legal Counsel, PC, Heit Law Group, Inc., or any other entity known or unknown presently, concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Heit Defendants' financial condition or business transactions might be ascertained.

109.    By virtue of the foregoing, the Heit Defendants' discharge should be denied under Bankruptcy Code § 727(a)(3).

110.    By virtue of the foregoing, the Heit Defendants' discharge should be denied under Bankruptcy Code § 727(a)(4)(A).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

1.    Actual damages in an amount to be determined at trial.

2.    Punitive damages for Defendants' willful, fraudulent, and malicious conduct.

3.    That the Court grant supplemental jurisdiction on Plaintiff's state action claims.

4.  Attorneys' fees and costs pursuant to 11 U.S.C. 110

5.  Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Daniel Gonzalez

P.O. Box 847, Pleasanton CA 94566

916-247-6886

dgonzie@gmail.com

Date: August 30, 2024

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

**PLAINTIFFS**

Daniel Gonzalez

**DEFENDANTS**

Brian Morgan Heit
ADEPT LEGAL Counsel, PC.
_formerly_, Heit
Law Group Inc

**ATTORNEYS** (Firm Name, Address, and Telephone No.)

DANIEL GONZALEZ (916) 247-6886
P.O. Box 847, Pensauito CA 94566

**ATTORNEYS** (If Known)

Unavailable
N/A

**PARTY** (Check One Box Only)
- ☐ Debtor     ☐ U.S. Trustee/Bankruptcy Admin
- ☒ Creditor   ☐ Other
- ☐ Trustee

**PARTY** (Check One Box Only)
- ☒ Debtor     ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Creditor   ☐ Other
- ☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

See Complaint Attached

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge** #4
- ☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☒ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims #1
- ☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud #2
- ☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☒ 68-Dischargeability - §523(a)(6), willful and malicious injury #3
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☒ 71-Injunctive relief – imposition of stay
- ☒ 72-Injunctive relief – other _ex_

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment** #5
- ☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa _et.seq._
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 20,000,000.00 |
| Other Relief Sought | Supplemental Jurisdiction/Declaratory Relief |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>BRIAN MORGAN HEIT | BANKRUPTCY CASE NO.<br>9-24-bK-10608-RC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of CA | DIVISION OFFICE<br>Santa Barbara | NAME OF JUDGE<br>R. Clifford |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF<br>Daniel Gonzalez | DEFENDANT<br>Absort Legal Counsel | ADVERSARY<br>PROCEEDING NO.<br>9-24-bK-10554-RC |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>Central Dist Ct CA | DIVISION OFFICE<br>Santa Barbara | NAME OF JUDGE<br>R Clifford |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>Sept. 3, 2024 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Daniel Gonzalez | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.